UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA DE LA TORRE, | ) Case No. CV 13-7159-SP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ) ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

**I.**

**INTRODUCTION**

On October 4, 2013, plaintiff Laura De La Torre filed a complaint against defendant Carolyn Colvin, seeking a review of a denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the

1

administrative law judge ("ALJ") properly determined that plaintiff could perform her past relevant work; (2) whether the ALJ properly rejected the opinion of plaintiff's treating physician Lara Stewart, M.D.; and (3) whether the ALJ properly assessed plaintiff's credibility.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-14; Defendant's Memorandum in Support of Answer ("D. Mem.") at 2-13.

Having carefully studied the parties' written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly rejected plaintiff's subjective complaints.  But the court also finds the ALJ improperly rejected the opinion of plaintiff's treating physician, and that the ALJ's step four determination is not supported by substantial evidence.  Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty years old on her alleged disability onset date, has a GED.  AR at 63, 106, 145.  Her past relevant work includes employment as a cashier. *Id.* at 22, 63, 146, 173.

On March 16, 2010, plaintiff filed applications a period of disability, DIB, and SSI alleging an onset date of September 1, 2009, due to a anxiety, panic attacks, arthritis of the spine, and asthma. *Id.* at 104-116, 144.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 82-86.

On June 20, 2011, plaintiff, represented by counsel, appeared and testified

at a hearing before the ALJ. *Id.* at 60, 62-79. The ALJ denied benefits on February 13, 2012. *Id.* at 13-23.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2009. *Id.* at 15.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: asthma, chronic obstructive pulmonary disorder ("COPD"), osteoarthritis of the lumbar spine, depressive disorder, and anxiety disorder. *Id* at 16.

At step three, the ALJ found that plaintiff's impairments did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the RFC to perform light work, as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except that she should avoid concentrated exposure to pulmonary irritants and her work should be limited to simple, repetitive tasks. *Id* at 17.

The ALJ found, at step four, that plaintiff was able to perform her past relevant work as a cashier. *Id.* at 22. Thus, the ALJ concluded that plaintiff was not suffering from a disability as defined by the Social Security Act. *Id.* at 23.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 4-9. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [AC's] conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A.   The ALJ Properly Considered Plaintiff's Credibility

Plaintiff contends that the ALJ failed to properly consider her credibility. P. Mem. at 19-21. Specifically, plaintiff argues that the reasons the ALJ provided for discounting plaintiff's credibility are not supported by substantial evidence. *Id.* at 19-21. The court disagrees.

The Commissioner must make specific credibility findings, supported by the record. Social Security Ruling 96-7p. To determine whether testimony concerning symptoms is credible, the Commissioner engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the Commissioner must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The Commissioner may consider several factors in weighing a claimant's credibility, including:  (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 18. At the second step, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because he found that her claimed limitations were not supported by the objective medical evidence, the descriptions of her daily activities, or her work history. *Id.* at 20.

The first ground provided by the ALJ for finding plaintiff less credible was the lack of objective medical evidence to substantiate plaintiff's claims and the inconsistencies between the available objective evidence and the claims. *Id.* at 18. An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but it may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Here, plaintiff claimed at the hearing before the ALJ that she stopped working because of mental health issues. AR at 65, 67-68, 71, 73. Specifically, plaintiff testified that she suffers from panic attacks and forgetfulness. *Id*. at 65, 67-68, 71. Plaintiff also indicated in written submissions – including multiple Disability Reports and a Function Report – that she suffers from anxiety and panic attacks, as well as a lack of motivation. *Id*. at 144, 168, 169, 171, 178.

The ALJ found plaintiff's claims unsupported by objective medical evidence. *Id*. at 18-19. With respect to plaintiff's assertions that she was unable to sustain the mental demands of competitive employment, the ALJ first noted that she failed to present herself to the Venice Family Clinic for treatment until several months after her alleged onset date, and when she did go to the clinic she admitted that she had not taken her medication for several months, due to losing her

insurance. *Id.* at 18. As plaintiff asserts, a claimant's failure to seek treatment due to inability to pay cannot support an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Thus, this portion of the ALJ's reasoning is not clear and convincing, although there is some question as to whether the ALJ was correct that loss of insurance led to her lapse in medication and treatment, since the clinic notes reflect (and plaintiff testified) that plaintiff's care was transferred to the Venice Family Clinic when she lost her insurance. *See* AR at 66, 304.

In any event, the remainder of the ALJ's description of plaintiff's mental health treatment history does support the ALJ's adverse credibility decision. The ALJ found that although plaintiff had a history of mental health treatment, for approximately 18 years she had been "fairly stable" on her regimen, and that situational stressors – such as caring for her disabled brother and separating from her abusive husband – existed. AR at 18. Further, the ALJ observed that plaintiff exhibited an "ok" affect with linear, goal directed thought processes, good intellect, and fair insight/judgment. *Id.* The ALJ observed that while progress notes from the remainder of 2010 indicated breakthrough depression leading to anxiety symptoms, that these were apparently related to her "suffering from stressors with her husband." *Id.*; *see id.* at 301. He noted that plaintiff experienced dysphoric mood in November 2010; however, he observed that "mental status examination was relatively unremarkable." *Id.* at 18. The ALJ further noted that though plaintiff returned to the clinic throughout 2011 for physical complaints, the record was "void of any further specific mental health treatment after January 2011." *Id.* The ALJ observed that in July 2010, plaintiff reported occasional panic attacks to William Goldsmith, M.D., but Dr. Goldsmith observed only a slightly anxious mood, full affect, clear speech, organized thought

processes, normal thought content, orientation, intact memory and concentration, above average intelligence, and adequate insight and judgment. *Id.* at 19, 223-24. The ALJ noted that after that evaluation, there were no reported instances of panic attacks. *Id.* at 19.

In terms of physical limitations, plaintiff alleged an inability to work due to arthritis and asthma. *Id.* at 144. She complained of pain on the right side of her body and limited strength, which included difficulty lifting. 166, 170, 178. Plaintiff also reported difficulty bending and kneeling. *Id.* at 170.

The ALJ noted that with respect to plaintiff's allegations regarding physical limitations, the record revealed that her asthma was largely controlled with medication. *Id.* at 19. Regarding lumbar spine pain reported in August 2010, the ALJ noted that the record reflected that "physical examinations were relatively unremarkable with negative straight leg raising, full range of motion, and tenderness to palpation." *Id.*; *see id.* at 284. Plaintiff reported radiating lower back pain into the right buttocks with a physical examination showing decreased reflexes in the right lower extremity; however, she was given a prescription for muscle relaxers and "the record is void of any musculoskeletal complaints for almost 5 months." AR at 19. In July 2010, plaintiff reported radiating lower back and neck pain exacerbated by standing; however Soheila Benrazavi, M.D., observed only tenderness in the lower lumbar region, negative straight leg raising, full range of motion with pain only at the extremes, and full range of motion in all upper and lower extremities. *See* AR at 214. She had normal motor function, normal sensation, was able to ambulate without the need for an assistive device, stand on heels and toes, and perform tandem gait. *Id.* at 19, 213. The court thus finds the ALJ presented a clear and convincing reason to discount plaintiff's

claims of pain and limitations and to determine that plaintiff's claims lack support from objective medical evidence.

The ALJ gave a further clear and convincing reason in stating that plaintiff's daily activities were not consistent with the alleged degree of pain and impairment. *See* AR at 20. For example, the ALJ referenced a Third Party Function Report completed in July 2010 reflecting that plaintiff was able to care for her disabled older brother, including preparing meals, doing errands, taking him to doctor's appointments, and meeting with his case manager. *Id.* at 20, 157-164. The ALJ further noted that plaintiff had no difficulties with personal care, preparing meals, driving, walking, using public transportation, shopping for clothes and groceries, handling money, reading, writing, and doing household chores such as laundry, cleaning, and ironing. *Id.* She was able to attend family events and church on a weekly basis, had no difficulty getting along with others, was able to pay attention for an hour, follow written and spoken instructions, get along with authority figures, and handle stress and changes. *Id.* at 20, 157-161, 163. In addition, the ALJ separately referenced plaintiff's report to Dr. Goldsmith that she assisted her brother with his activities of daily living, did housework, cooking, and cleaning, and was planning to return to school. *Id.* at 19, 223, 224.

Finally, the ALJ compared plaintiff's work history with her testimony, noting that although plaintiff's post-onset work activity did not constitute disqualifying substantial gainful activity, it nevertheless indicated that at times her daily activities and physical abilities were "considerably greater than alleged." *Id.* In 2010, plaintiff earned $8,755 which was "apparently self-employment earnings." *Id.* The ALJ observed that plaintiff "proved that she is capable of engaging in work activity by actually doing the same in employment for an extended period of months." *Id.* Further, the ALJ noted that plaintiff had been

"treated by a mental healthcare provider for approximately 20 years and was noted to be stable and working throughout that period." *Id*. He also observed that "[t]he fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work." *Id*. He noted that in a Function Report, plaintiff stated that she was able to pay attention for 2-3 hours. AR at 170. The ALJ concluded that "[w]hile the claimant's reported abilities and activities do not alone establish her ability to perform the range of work [identified in the RFC], in combination with the paucity of clinical findings and overall lack of treatment, they do indicate her degree of limitation has been overstated." *Id.* at 20.

Plaintiff argues that the ALJ had a duty to inquire into her 2010 earnings because the record of her post-onset work is not clear, as evidenced by the ALJ's statement that the $8,755 was "apparently" self-employment income. P. Mem. at 13. Specifically, plaintiff contends that "[o]nce a perceived inconsistency between the written record and [] oral testimony arises, the ALJ must confront the claimant with the inconsistency and if an explanation is made address that explanation." P. Mem. at 13. In support of her position she cites two immigration cases: *Shah v. INS*, 220 F.3d 1062 (9th Cir. 2000) and *Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009). Neither of these cases supports plaintiff's contention. Both stand for the proposition that an immigration judge cannot base an adverse credibility determination on an inconsistency without addressing the applicant's explanation thoroughly. *Shah*, 220 F.3d at 1068; *Soto-Olarte*, 555 F.3d at 1091-92. Plaintiff fails to demonstrate the applicability of this rule to the Social Security context and the court thus rejects this argument. *See, e.g., Palomo v. Colvin*, 2014 WL 4929040, at *7 n.6 (C.D. Cal. Oct. 1, 2014) (rejecting identical argument and citing similar cases).

The three factors considered by the ALJ in evaluating plaintiff's subjective complaints of pain – lack of objective evidence, activities of daily living, and work history – were valid, and the ALJ's explanations for his credibility determination were clear and convincing because the ALJ set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell*, 947 F.2d at 345-46 (9th Cir. 1991)). Accordingly, this court finds the ALJ properly discounted plaintiff's subjective complaints.

B. **The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the Opinion of Treating Physician Stewart**

Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician Lara Stewart, M.D. Pl. Mem. at 7-10. Specifically, plaintiff claims that the ALJ failed to offer specific and legitimate reasons for discounting this physician's opinions. *Id.* at 17. The court agrees.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a

greater opportunity to understand and observe a claimant. *Smolen*, 80 F.3d at 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830.

Dr. Stewart, a specialist in family medicine, reported treating plaintiff every two to three months between February 11, 2010 and March 28, 2011. AR at 264, 267. Dr. Stewart completed a Physical Residual Functional Capacity Questionnaire ("RFC Questionnaire")  regarding plaintiff's limitations on April 11, 2011. *Id.* at 264-267.  The RFC Questionnaire reflects Dr. Stewart's diagnosis of De Quervain's tenosynovitis, asthma/COPD, sciatica, arm/hand weakness, and osteopenia. *Id.* at 264.  In the RFC Questionnaire, Dr. Stewart indicated the clinical findings and objective signs supporting her diagnosis as follows: an x-ray of plaintiff's hands showing osteoarthritis in her thumbs; positive musculoskeletal findings, and a positive Finkelstein's test. *Id.*

Dr. Stewart opined that plaintiff retained the RFC to sit, stand, or walk each for a total of 4 hours in an 8-hour workday, but can stand for no more than two hours at a time; frequently lift up to 20 pounds; occasionally climb ladders and stairs; and never stoop or crouch. *Id.* at 266. Additionally, Dr. Stewart noted plaintiff's limited ability to do "repetitive reaching, handling or fingering" and the likelihood that plaintiff would miss more than four days of work a month. *Id.* at 266-267.

The ALJ found that certain aspects of Dr. Stewart's opinion "are in fact consistent with the residual functional capacity determined in this decision and given significant weight," but the ALJ afforded "no weight to the upper extremity limitations" or to the indication that plaintiff would miss more than four workdays every month. *Id.* at 21. The ALJ gave four reasons for rejecting these limitations: (1) plaintiff has not sought treatment since April 2011; (2) Dr. Stewart's progress notes do not support her opinion that plaintiff would regularly miss work; (3) plaintiff's daily activities are inconsistent with these limitations; and (4) Dr. Stewart's assessments rely heavily on plaintiff's subjective reports, whereas the ALJ found plaintiff not credible in that regard. *Id.* Plaintiff challenges the sufficiency of the first reason, again citing her inability to afford treatment. But as defendant notes, plaintiff lost her MediCal coverage in 2009 and still obtained treatment thereafter. *See*, *e.g.*, AR at 66-67, 195-307. Thus, the ALJ gave specific and legitimate reasons for rejecting the extremity and missed work limitations opined by Dr. Stewart.

But the ALJ failed to explain why he omitted from plaintiff's RFC Dr. Stewart's limitations vis-à-vis sitting, standing, and walking. *Compare id.* at 266 *with id.* at 21. The ALJ's failure to include these limitations in plaintiff's RFC constitutes an implicit rejection of this part of Dr. Stewart's opinion. *See Smolen*, 80 F.3d at 1286 ("By disregarding [plaintiff's treating physicians'] opinions and making contrary findings, [the ALJ] effectively rejected them."). Yet the ALJ failed to provide any reason, let alone a specific and legitimate one, for rejecting those findings. *See*, *generally*, *id.* at 21. Accordingly, the ALJ erred in rejecting this portion of Dr. Stewart's opinion. *See Lester*, 81 F.3d at 830 ("Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons'

supported by substantial evidence in the record for so doing.") (internal quotation marks and citation omitted).

This error was not harmless. Plaintiff points out that the portion of Dr. Stewart's opinion dealing with her sitting, standing, and walking limitations impacts whether she can perform her past relevant work as a cashier. P. Mem. at 9. This work is generally performed at the light exertional level which involves a great deal of standing and walking. P. Ex. 1; SSR 83-10. "Relatively few unskilled light jobs are performed in a seated position." SSR 83-10. "The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." *Id.* Dr. Stewart's sitting, standing, and walking restrictions preclude the ability to perform the cashier's job at the light level.

Accordingly, this matter must be remanded to allow the ALJ to consider this portion of Dr. Stewart's opinion and either incorporate it into plaintiff's RFC or provide specific and legitimate reasons for rejecting it.

**C.    The ALJ's Past Relevant Work Determination Conflicts with the RFC**

Plaintiff argues the ALJ erred at step four in determining she can perform her past relevant work as a cashier because the reasoning component of the General Education Development ("GED") requirements for that job, as defined in the U.S. Department of Labor's Dictionary of Occupational Titles, ("DOT"), (4th ed. 1991), conflicts with the ALJ's RFC assessment limiting her to simple, repetitive tasks. P. Mem. at 4-6. The court agrees.

Each DOT job description includes GED scales for reasoning, language, and mathematics, which are "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C, Section III. To determine a job's simplicity and the reasoning level required, one

should look to the GED reasoning level ratings for the job listed in the DOT. *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves." *Id.* The DOT provides that a cashier II requires GED reasoning level 3 work. P. Mem. at 5; Ex. 1. Reasoning level 3 work requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." Ex. 1.

There is a split among the circuit courts as to whether the limitation to simple tasks is compatible with a reasoning level of three. *Compare Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (a claimant limited to "simple" work could perform a reasoning level three job); *Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007) (a claimant with an inability to do "complex technical work" was not precluded from unskilled jobs with a reasoning level of three), and *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (limitation to simple and routine tasks is inconsistent with level-three reasoning). The Ninth Circuit has not addressed this issue, but among its district courts that have, they have consistently held that a limitation to simple, repetitive tasks is consistent with reasoning level two jobs but incompatible with reasoning level three jobs. *See Grimes v. Astrue*, 2011 WL 164537, at *4 (C.D. Cal. Jan. 18, 2011) (stating that "[n]umerous district courts in this Circuit have held that a limitation to simple, repetitive tasks is inconsistent with Reasoning Level 3 jobs" and citing cases).

This court agrees that reasoning level 3 and, consequently, the cashier II job as defined in the DOT, are at odds with the ALJ's RFC assessment limiting her to simple, repetitive tasks. The DOT "raises a presumption as to the job classification" requirements. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th

15

Cir.1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* In this case, there was no vocational expert testimony provided at the hearing. Rather, the ALJ relied upon a Vocational Assessment performed on August 3, 2010 finding that plaintiff was able to perform her past work as a cashier. AR at 22. The ALJ did not discuss in his opinion the variance between the reasoning level required for the cashier job and his limitation of plaintiff to "simple, repetitive tasks." *Id.* at 17. The ALJ thus erred in his step four determination, as it is unsupported by substantial evidence. *See Smolen*, 80 F.3d at 1279.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate.

*See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

      Here, as set out above, remand is required because the ALJ failed to properly evaluate Dr. Stewart's opinion concerning sitting, standing, and walking limitations, and failed to account for the assessed RFC's mental limitations when determining, at step four, that plaintiff could perform her past work as a cashier. The record has not been fully developed on these points, particularly as to the step four error.  On remand, the ALJ shall:  (1) reconsider the opinion provided by Dr. Stewart regarding plaintiff's physical limitations with regard to standing, sitting, and walking and either credit the opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it; (2) clarify his RFC determination if need be, based on his reconsideration of Dr. Stewart's opinion; and (3) to the extent necessary, retain a vocational expert to determine whether plaintiff is capable of performing her past relevant work.  If not, the ALJ shall then proceed to step five of the sequential analysis to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: December 9, 2014

SHERI PYM
United States Magistrate Judge